Dear Mr. Grant:
This opinion is issued in response to the request of the Department of Transportation and Development ("DOTD") and of the Public Belt Railroad Commission of the City of New Orleans ("PBRC") to review, reconsider, and clarify Opinion Nos. 04-0091 and 04-0091-A. In Op. No. 04-0091, this office reached the following conclusion:
 . . .it is the opinion of the Attorney General that the Department of Transportation and Development may use the existing right-of-way for the authorized widening and improvement of the highway portion of the bridge and approaches, without paying any compensation to the City of New Orleans or its Public Belt Railroad Commission.
Opinion No. 04-0091-A listed the particular tracts of land purchased by the PBRC as ". . .being necessary for and to be used and employed in the construction of a bridge and appurtenances over the Mississippi River at or near New Orleans, authorized by Act No. 68 of 1916 . . ." (City of New Orleans Ordinance No. 5842), or ". . . for the construction and operation of the Mississippi River Bridge and for the construction and operation of the Public Belt Railroad System," (resolution of the PBRC, dated March 25, 1948), or ". . . to acquire, construct, maintain and operate across the Mississippi River, at or near New Orleans, a bridge for railroad and highway uses, together with all approaches, railroad, railway, and highway connections and appurtenances . . ." (City of New Orleans Ordinance No. 17,185, dated March 5, 1948).
The opinion concluded that all of said property ". . . was acquired by the PBRC for the express purpose of providing a right-of-way for the railroad and highway approaches to the Huey P. Long Bridge; and, that any or all of the land comprising said parcels may be used by the DOTD for the improvements to, and widening of, said highway approaches, without payment of any compensation to the City of New Orleans or its Public Belt Railroad Commission." *Page 2 
In reconsidering the opinions, it is necessary to re-examine two sets of documents or transactions, those being the bridge contract and attachments, and the ordinances and resolutions authorizing the purchase of the land.
Bridge Contract
The bridge contract between the State and the PBRC, dated November 5, 1932, granted the State a perpetual servitude over what was described as the "highway section" of the project, which was defined on Page 11, Sec. (e) of the contract as follows:
 . . . the earth and viaduct approaches to said bridge intended for motor cars, automobiles, and other vehicles, and pedestrians, which said approaches run respectively as shown in said "Exhibit A" from the Jefferson Highway on the east bank of the Mississippi River to the west end of said bridge; together with the roadways and sidewalks on the bridge designed and intended for use by motor cars, automobiles and other vehicles, and pedestrians; together with all metal work of the roadway and sidewalk floor systems necessary to support the roadways and sidewalks or to attach such floor systems to the supporting trusses of the main bridge or the columns of the viaduct approaches; and together with such appurtenances to said bridge and approaches as are used directly in connection with said roadways and sidewalks . . .
The location and limits of both the "railroad section" and the "highway section" are defined and limited by a small drawing labeled "Exhibit A," which is, by its own notations, a sketch, and not to scale. Representatives of the PBRC have confirmed that "Exhibit A" was not supported by, referenced to, or drawn from, any survey. Because "Exhibit A" is not a plat of any survey, because it is not drawn to any scale, and because of its extremely small size, it simply cannot be determined by anyone whether the right-of-way granted to the State for the "highway portion" extended beyond, or was wider than, that land actually used for the original highway construction. Other than the definition of "highway section," described above, which definition relied upon said "Exhibit A," there is no mention in the bridge contract as to what property was dedicated to or defined as the highway and railroad right-of-ways, nor is there any mention of future expansion of either the railroad or highway systems. Although the requirements for future expansion, improvements, or relocation of the railroad or highway systems could have and probably should have been addressed in the bridge contract, they were not.
Property Purchases
As discussed in Opinion No. 04-0091-A and as summarized above, the city ordinances and PBRC resolutions authorizing the purchase of the necessary real property did specifically and succinctly state that the property was to be used in the *Page 3 
construction of a bridge and appurtenances over the Mississippi River at or near New Orleans, and for the construction and operation of the Mississippi River Bridge and for the construction and operation of the Public Belt Railroad System, and to acquire, construct, maintain and operate across the Mississippi River, at or near New Orleans, a bridge for railroad and highway uses, together with all approaches, railroad, railway, and highway connections and appurtenances. Although the purposes were stated, several things should be considered:
Admittedly, R.S. 33:4532 placed similar restrictions on the use of the property; however, once the construction of the bridge and approaches had been completed, the City of New Orleans could have, under the same statute, declared the remaining property to be surplus, subject to sale. The conclusion which must be drawn is that, although the property was purchased for the specific purpose of building the bridge and its approaches, the excess property, remaining unused after the original construction was completed, was not, in fact, dedicated to either the railroad or the state as right-of-way.
The purchase of the property for a specific purpose did not, in and of itself, constitute a dedication of all or a portion of the property as highway right-of-way, and there is no written dedication in either the purchase documents or in the bridge contract.
Accordingly, the conclusions of Opinion Nos. 04-0091 and 04-0091-A are clarified and modified in the following respects:
Under the bridge contract, the property designated as the "highway section" and available for highway construction, was shown in "Exhibit A" attached to the contract; however, because of the inherent inaccuracies of "Exhibit A," it cannot be determined what, if any, property was actually dedicated to the State as the "highway portion," other than the land actually used for the original construction.
The purchase by the PBRC of certain real property for the purpose of building the Huey P. Long and approaches, and the ordinances and resolutions authorizing such purchases, did not act as a dedication of any specific or particular portion of the land to the State as right-of-way for highway maintenance, expansion or relocation; and, no other written dedication of the lands for right-of-way has been found.
For the above reasons, a bona fide dispute could exist, and apparently does exist, between the State and the PBRC as to what, if any, additional property is available to the State for expansion of and improvements the highway approaches of the Huey P. Long Bridge, and whether or not the State is required to compensate the PBRC for such additional property. Under the circumstances, the matter should be subject to a reasonable settlement between the State and the PBRC, if such highway improvements are to be constructed expeditiously. *Page 4 
We trust that this adequately responds to your request. If you have any additional questions, please do not hesitate to contact our office.
 Very truly yours, CHARLES C. FOTI, JR. ATTORNEYGENERAL
BY: __________________________RICHARD L. McGIMSEYASSISTANT ATTORNEY GENERAL
 CCF, JR/RLM